UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SYLVIA AGARO,

       Petitioner,

v.                                        Case No. 3:18-cv-341-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Sylvia Agaro, an inmate of the Florida penal system, initiated this action on March 6, 2018,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Agaro challenges a 2013 state court (Putnam County, Florida) judgment of conviction for conspiracy to commit trafficking in cocaine. Agaro raises five grounds for relief. See Petition at 5-11.[2] Respondents have submitted a memorandum in opposition to the Petition. See Response to Petition (Response; Doc. 6) with exhibits (Resp. Ex.). Agaro filed a brief in reply. See Petitioner's Traverse to State's Response (Reply; Doc. 7). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On January 10, 2013, the State of Florida (State) charged Agaro by way of Second Amended Information with one count of conspiracy to commit trafficking in cocaine (200-400 grams). Resp. Ex. A. Following a trial, a jury found Agaro guilty as charged. Resp. Ex. B at 595. On July 12, 2013, the trial court sentenced Agaro to a term of incarceration of fifteen years, with a seven-year minimum mandatory term of imprisonment, followed by five years of probation. Resp. Ex. C at 5-6. The trial court ordered the sentence to run concurrently with any other active sentence being served. Id. at 9.

Agaro, with the assistance of counsel, appealed her conviction and sentence to Florida's Fifth District Court of Appeal (Fifth DCA). Resp. Ex. D. In her initial brief, Agaro raised the following claims:  (1) the State committed a discovery violation when it failed to disclose Agent Christopher Middleton as an expert; (2) the trial court failed to conduct a hearing on this discovery violation; and (3) the trial court should not have qualified Middleton as an expert. Resp. Ex. E. The State filed an answer brief. Resp. Ex. F. On April 22, 2014, the Fifth DCA per curiam affirmed Agaro's conviction and sentence without issuing a written opinion, Resp. Ex. G, and on May 16, 2014, issued the Mandate, Resp. Ex. H.

On November 13, 2014, Agaro filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. I. Agaro raised the following claims in the Rule 3.850 Motion:  (1) counsel failed to convey a plea offer; (2) the trial court erred in allowing Middleton to present opinion testimony; (3) counsel failed to object and argue that the State committed a discovery violation in seeking to present Middleton as an expert; (4) the trial court erred in failing to hold a

2

hearing on the alleged discovery violation; (5) counsel failed to engage in plea negotiations; (6) counsel failed to investigate, depose, and call witnesses; (7) the trial court erred in allowing the State to present evidence of uncharged crimes; (8) counsel failed to request a jury instruction on Middleton's presence at the prosecution's table; (9) Middleton's opinion testimony resulted in fundamental error; (10) counsel failed to obtain a presentence investigation report; and (11) the cumulative effect of counsel's errors prejudiced her. Id. The postconviction court initially denied grounds two, three, four, seven, nine, and ten, and ordered an evidentiary hearing to be held on the remaining grounds for relief. Resp. Ex. K. Following the hearing, the postconviction court denied relief on the remaining grounds. Resp. Ex. M. On October 31, 2017, the Fifth DCA per curiam affirmed the denial of the motion without issuing a written opinion, Resp. Ex. Q, and issued the Mandate on December 1, 2017, Resp. Ex. R. After the Fifth DCA issued the Mandate, Agaro moved for rehearing, Resp. Ex. S, which the Fifth DCA denied, Resp. Ex. T.

On December 10, 2014, Agaro filed a petition for writ of habeas corpus with the Fifth DCA. Resp. Ex. U. In the petition, Agaro alleged her appellate counsel failed to argue on direct appeal that the trial court erred in allowing: (1) testimony of criminal transactions that were not alleged in the Information; and (2) Middleton to sit at the prosecutor's table during trial. Id. On February 6, 2015, the Fifth DCA denied relief on the petition. Resp. Ex. W.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Agaro's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S.  838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman, 501
> U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be

excused under certain circumstances. Notwithstanding that a claim has been procedurally

defaulted, a federal court may still consider the claim if a state habeas petitioner can show

either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage

of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to

establish cause,

> the procedural default "must result from some objective factor
> external to the defense that prevented [him] from raising the
> claim and which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.
> 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6]
> Under the prejudice prong, [a petitioner] must show that "the
> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." Id. at
> 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive

consideration on the merits of a procedurally defaulted claim if the petitioner can establish

that a fundamental miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive consideration
> on the merits of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional violation has
> probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in
> the absence of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court

11

decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

### VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Three

In Ground One, Agaro alleges that her counsel failed to convey a seven-year plea offer. Petition at 5. Likewise, in Ground Three, Agaro asserts the same claim while also alleging that her counsel failed to engage in plea negotiations with the State and discuss with her the possibility of cooperating with the State for a lesser sentence. <u>Id.</u> at 8.

Respondents contend that Agaro failed to exhaust these claims. Response at 8. Although Agaro raised these claims in her Rule 3.850 Motion, Respondents aver that Agaro did not raise the denial of relief on these claims when she appealed. <u>Id.</u> In her Reply, Agaro concedes that she did not exhaust the claims in Grounds One and Three and gives no argument to overcome the failure to exhaust. Reply at 1. The record reflects that Agaro raised both claims in her Rule 3.850 Motion. Resp. Ex. I at 2-3, 9. However, on appeal of the denial of her motion, Agaro only argued that the postconviction court erred in denying ground six, counsel's alleged failure to investigate and call witnesses. Resp. Ex. O. Under Florida law, a failure to raise arguments on appeal results in an

abandonment of those claims. See Austin v. State, 968 So. 2d 1049, 1049-50 (Fla. 5th DCA 2007). As such, Agaro failed to exhaust this claim by invoking a complete round of the State's established appellate review process. Boerckel, 526 U.S. at 845. Agaro has not alleged any cause or prejudice to overcome her failure to exhaust nor established her actual innocence; therefore, the claims in Grounds One and Three are due to be denied as unexhausted.

Nevertheless, even if properly exhausted, Agaro is not entitled to relief. In federal habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 28 U.S.C.A. § 2254(e)(1). A counsel's failure to convey a plea offer can constitute deficient performance. Lafler v. Cooper, 566 U.S. 156, 163 (2012). In order to establish that a failure to convey a plea offer was prejudicial, a petitioner must demonstrate that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164; see also Alcorn v. State, 121 So. 3d 419, 422 (Fla. 2013) (holding that to state a facially sufficient claim that counsel's alleged deficient performance led a defendant to reject a plea offer, the defendant must allege he or she would have accepted the offer, the prosecutor would not have withdrawn the offer, the court would have accepted the plea, and the conviction or sentence, or both, would have been less severe).

Here, Agaro has neither alleged nor proven that she would have accepted the plea or that the trial court would have accepted it. Moreover, following an evidentiary hearing on this issue, the postconviction court found Agaro's counsel's testimony that he conveyed the seven-year plea deal, discussed plea offers with the State, and tried to get Agaro to cooperate with the State for a plea deal but she refused to do so to be credible. Resp. Ex. M at 2-4.[7] Agaro has failed to provide any evidence, clear and convincing or otherwise, to rebut the postconviction court's factual finding on this matter.  As such, this Court is bound by this factual determination, which refutes Agaro's claims here. In light of the above, relief on the claims in Grounds One and Three are due to be denied.

### B. Ground Two

Agaro asserts that her counsel failed to "object to the State belatedly seeking to qualify Agent Middleton as an expert, and for failing to request a [Richardson][8] hearing." Petition at 6. According to Agaro, counsel's failure prevented her from properly preserving the issue for appeal. Id. Respondents maintain that Agaro failed to exhaust this claim because she did not raise the denial of relief on this issue in her initial brief on appeal. Response at 8. Agaro does not dispute that this claim is unexhausted. Reply at 1. While Agaro did raise this claim in her Rule 3.850 Motion, Resp. Ex. I at 5-6, she did not raise it on appeal, Resp. Ex. O. Accordingly, Agaro failed to exhaust this claim. See Boerckel, 526 U.S. at 845; Austin, 968 So. 2d at 1049-50. Agaro has neither alleged cause and

---

[7] The transcript from the evidentiary hearing reflects that counsel testified that he talked with Agaro about cooperating with the State for a better deal, but Agaro repeatedly told him she had no information to offer. Resp. Ex. L at 24-25. The State introduced an email exchange between counsel and the prosecutor in which counsel sought a possible plea offer and the prosecutor noted Agaro previously rejected a plea offer in court. Id. at 25-27.

[8] Richardson v. State, 246 So.2d 771 (Fla. 1971).

prejudice to excuse her lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred. Therefore, relief on this claim is due to be denied as it is unexhausted.

Nevertheless, even if properly exhausted, this claim is without merit. Agaro's claim of prejudice rests entirely on the failure to preserve this issue for appeal. However, "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial in a case [where an issue was raised but not properly preserved]." Carratelli v. Stepp, 382 F. App'x 829, 832 (11th Cir. 2010). As such, Agaro has failed to establish the requisite prejudice upon which federal habeas relief could be granted. Moreover, on direct appeal, Agaro raised the issue of the State's failure to disclose Middleton as an expert and the trial court's error in permitting him to opine as an expert and failure to conduct a Richardson hearing. Resp. Ex. E. The State argued Agaro failed to properly preserve this issue for appeal. Resp. Ex. F. Even assuming Agaro's counsel did not properly preserve this issue, the Fifth DCA would have had to determine whether the error constituted fundamental error such that preservation would not be required. It ultimately concluded no reversible error occurred, fundamental or otherwise. Resp. Ex. G. As such, because Agaro could not establish error, much less fundamental error, she cannot establish prejudice under Strickland. See Strickland, 466 U.S. at 694-95 (determining that the prejudice standard in ineffective assistance of counsel claims should be lower than an outcome-determinative standard under which a reviewing court must conclude whether an error more likely than not altered the outcome of the case); Chandler v. State, 848 So. 2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were

fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the <u>Strickland</u> test."). Last the Court notes that the requirement to disclose expert witnesses is a matter of state law. <u>See generally</u> Fla. R. Crim. P. 3.220(b)(1)(A)(i). This Court must defer to a state court's ruling on a matter of state law. <u>See</u> <u>Pinkney v. Sec'y, Dep't of Corr.</u>, 876 F.3d 1290, 1295 (11th Cir. 2017) (quoting <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984)) (noting that "although 'the issue of ineffective assistance-even when based on the failure of counsel to raise a state law claim-is one of constitutional dimension,' we 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law."). In light of the above, relief on the claim in Ground Two is due to be denied.

### C. Ground Four

Next, Agaro contends that her counsel was deficient for failing to investigate, depose, or subpoena witnesses. Petition at 10. According to Agaro, counsel knew about three witnesses who were available and willing to testify, although she does not identify them, and who's testimony "could have given rise to an acquittal of the charges." <u>Id.</u> Agaro also does not explain the content of the testimony or how the testimony would have changed the outcome of her trial. <u>Id.</u>

Agaro raised a similar claim in her Rule 3.850 Motion. Resp. Ex. I at 10-11. Following an evidentiary hearing, the postconviction court denied relief, explaining:

> Trial Counsel testified that he did sit in on the State depositions of the witnesses. Trial Counsel testified that the witnesses were generally not credible and could not provide enough evidence to make it worth pursuing separate

> depositions and subpoenas that could ultimately lead to
> testimony of these potential witnesses based on the chosen
> defense that she (the Defendant) was not the person on the
> call. Some of the potential witnesses (Emily Hall, Debra
> Johnson, Ontario Irvin, Jivana [sic] Duncan, and Angie Fogle)
> allegedly could testify that the phone was stolen but could not
> provide a concrete timeline of when a phone was stolen. No
> good alibi witnesses. [sic] Based on the circumstances, Trial
> Counsel's decisions were strategic and could be considered
> reasonable. Neither prong of <u>Strickland</u> has been met here.
> Ground Six is denied.

Resp. Ex. M at 4. The Fifth DCA affirmed the denial of relief on this claim without a written

opinion. Resp. Ex. Q.

To the extent that the Fifth DCA decided the claim on the merits,[9] the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Agaro is not entitled to relief

on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to

deference, the claim in Ground Four is meritless. As an initial matter, the Court finds the

claim to be conclusory. Agaro fails to identify which witnesses should have been

investigated and how the absence of these witnesses prejudiced her. As a result, this

claim does not satisfy the heightened pleading requirements governing federal habeas

---

[9] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

petitions. See Mayle v. Felix, 545 U.S. 644, 648 (2005) (noting that Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a detailed statement that specifies all the grounds for relief and states facts in support of each ground); McFarland v. Scott, 512 U.S. 849, 856 (1994) (explaining that Rule 2(c) of the Rules Governing Habeas Corpus Cases mandates a heightened pleading requirement); Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (Rules Governing Section 2254 Cases in the United States District Court "mandate 'fact pleading' as opposed to 'notice pleading.'"). Moreover, claims of ineffective assistance of counsel cannot be based on conclusory allegations. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). For this reason alone, this claim is due to be denied. Nevertheless, in an abundance of caution the Court will consider the substance of the claim as it was identified before the state postconviction court.

In her Rule 3.850 Motion, Agaro alleged her counsel should have investigated Jervonna Duncan, Angela Fogel, and Larry Hall as potential witnesses. Resp. Ex. I at 10-11. Agaro asserted in state court that Duncan would have testified that Agaro was at work during the time that one of the alleged phone calls occurred. Id. Similarly, Fogel would have been able to testify that Agaro was in south Florida working during the time the State alleged she was in Palatka, Florida. Id. Finally, Agaro avers that Hall would have testified that he received a plea deal in connection with his role in the conspiracy. Id. At the evidentiary hearing on this claim, counsel testified that Agaro admitted it was her voice on the phone and that people referred to her "Auntie." Resp. Ex. L at 60. Regarding the witnesses counsel disclosed to the State, including Duncan, the State subpoenaed the

witnesses for purposes of depositions, and counsel took part in those depositions. Id. at 59-60. Thus, the record refutes Agaro's claim as to Duncan. As to the witnesses the State listed, counsel declined to depose them for strategic reasons because he did not want to open the door to any additional identifying evidence being produced through those depositions. Id. at 64-67. Accordingly, counsel either did depose the witnesses or made a strategic decision not to depose them. This Court, like the postconviction court, finds this strategy was reasonable given the facts of the case and, therefore, counsel was not deficient for failing to depose them. See Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Strickland, 466 U.S. at 690) ("In assessing an attorney's performance under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'").

Finally, the Court notes that the State presented substantial evidence of Agaro's guilt outside of the recorded wire-tapped phone conversations. The State relied on testimony from co-conspirators and law enforcement that testified Agaro connected Johnny Batts, the head of the criminal organization, with other individuals who could supply him with cocaine and that Agaro received money, confirmed through financial records, in exchange for her assistance. Resp. Ex. B at 66-80, 110-217, 281-94, 298-311, 336-39, 346-48, 354-63, 402-19. The record also shows that, contrary to Agaro's contention regarding Fogel's potential testimony, that Agaro never went to Palatka, Florida. Therefore, Fogel's testimony would be entirely irrelevant. Additionally, as to Hall, the record reflects that counsel in fact tried to call Hall as a witness but could not locate him. Id. at 477. Thus, the alleged failure to call Hall is not a deficiency on counsel's part

because Hall was unavailable to testify. In light of the foregoing, relief on the claim in Ground Four is due to be denied.

### D. Ground Five

In Ground Five, Agaro argues that her counsel failed to request a jury instruction as to the trial court permitting Middleton to sit at the prosecutor's table during trial despite the rule of sequestration being invoked. Petition at 11. Respondents aver that this claim is unexhausted because Agaro failed to raise the denial of this claim in her initial brief on appeal. Response at 8. Agaro does not dispute her failure to exhaust. Reply at 1. While Agaro did raise this claim in her Rule 3.850 Motion, Resp. Ex. I at 13-14, she did not raise it on appeal, Resp. Ex. O. Accordingly, Agaro failed to exhaust this claim. See Boerckel, 526 U.S. at 845; Austin, 968 So. 2d at 1049-50. Agaro has neither alleged cause and prejudice to excuse her lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred. Therefore, her claim is due to be denied as unexhausted

Nevertheless, even if properly exhausted, this claim is meritless. At the evidentiary hearing, counsel testified that he objected to Middleton's presence at the table but declined to request a jury instruction because he did not think the jury would understand and he did not want to draw attention to it. Resp. Ex. L at 77-79. Agaro fails to articulate why this strategy was unreasonable and the Court finds it is sound. Therefore, Agaro has failed to establish deficient performance. See Knight, 936 F.3d at 1340. Accordingly, the claim in Ground Five is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Agaro seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Agaro "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Agaro appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

      **DONE AND ORDERED** at Jacksonville, Florida, this 20th day of October, 2020.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Sylvia Agaro #L95624
        Rebecca McGuigan, Esq.